**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENIA K. EMMANOUIL and ANTHONY Z. EMMANOUIL<br><br>Plaintiffs,<br><br>v.<br><br>MITA MANAGEMENT, LLC et al.<br><br>Defendants. | Civil Action No. 11-5575 (JAP)<br><br>**MEMORANDUM OPINION** |

**PISANO, Judge**

This matter comes before the Court upon three motions brought by Plaintiffs Eugenia K. Emmanouil and Anthony Z. Emmanouil (collectively "Plaintiffs" or "Emmanouils") and Defendants Vincent Roggio and Callie Lasch Roggio (collectively "Defendants" or "Roggios"). The first motion is Defendants' Motion to Dismiss for insufficient service of process. (DE 19.) Plaintiffs oppose the Motion to Dismiss. (DE 30.) The second motion is a Motion for Default Judgment brought by Plaintiffs against Defendants. (DE 14.) The third motion is a Cross Motion to Vacate Default by Defendants. (DE 22.) Plaintiffs oppose the Cross Motion to Vacate Default. (DE 34.) The Court has considered the parties' submissions and decided the matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny the Motion for Default Judgment and grant the Cross Motion to Vacate Default. Further, the Court will deny the Motion to Dismiss, but will extend the time to complete service of process by thirty (30) days. If, upon expiration of the thirty day extension, the Plaintiffs have been unable to serve Defendants despite a diligent effort to do so, Plaintiffs

shall have leave from the Court to move for alternative service of process pursuant to Fed. R. Civ. P. 4(e)(1) and N.J. Ct. R. 4:4-4(b)(3).

## I. BACKGROUND

After a jury trial in Emmanouil v. Roggio, Civ. Action No. 06-1068 ("Underlying Action"), Chief Judge Garrett E. Brown, Jr. entered a judgment on October 1, 2010 in the amount of $1,222,311 in favor of Anthony Emmanouil, Eugenia Emmanouil, and West Belt Auto Supply, Inc. and against Vincent Roggio. (Verified Compl. ¶ 1; DE 1.) On April 6, 2011, Chief Judge Brown amended the judgment to include pre-judgment interest and legal fees, bringing the total amount to $1,945,119 ("Final Judgment"). (Id.) After entry of the Final Judgment, Plaintiffs requested and were granted additional discovery to locate the assets of Vincent Roggio pursuant to Fed. R. Civ. P. 69(a)(2).[1] (Id. at ¶ 24.) In the order granting post-judgment discovery, Judge Brown stated that "it appears . . . that [Vincent] Roggio has, for years, been funding most aspects of his life with approximately $2 million in total funds" transferred to Vincent Roggio by Michael Avallone and Mita Management, LLC. Mita Management, LLC, owned by Michael Avallone, is a company that manages several check cashing stores. Mr. Avallone, Mita Management, LLC, and several of these check cashing stores are also defendants in the instant action ("the Mita Defendants"). The court granted discovery into the "apparently unusual relationship" between Vincent Roggio and the Mita Defendants.

Based upon post-judgment discovery and after being unable to secure payment of the Final Judgment, Plaintiffs filed a Verified Complaint on September 26, 2011. (DE 1.) Plaintiffs

---

[1] Fed. R. Civ. P. 69(a)(2) states, "In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."

allege, <u>inter alia</u>, fraudulent conveyance and transfer, conspiracy, debtor false oath to creditor, unjust enrichment, and conversion. (<u>Id.</u>) With the Verified Complaint, Plaintiffs also filed an Order to Show Cause why the Court should not enter a preliminary injunction to prevent further transfers between the Roggios and the Mita Defendants and to require the Roggios to turn over assets sufficient to satisfy the Final Judgment. (DE 1-14.) The Order to Show Cause, granted on October 27, 2011, required the following method of service:

> IT IS FURTHER ORDERED that a true but uncertified copy of this Order and the Verified Complaint, together with any and all supporting papers shall be served upon the defendants or their counsel either (1) by personal service or by overnight mail or by certified mail and regular mail or (2) as otherwise permitted by the Federal Rules of Civil Procedure within 7 (seven) days of the date hereof by counsel for Plaintiffs or their designee if not already done[.]

(DE 3.) The Order to Show Cause required Defendants to file an answer within seven days after being served. (<u>Id.</u>)

Plaintiffs attempted service previously on September 26, 2011 on Defendants' counsel in the Underlying Action, John Markham, Esq., but Mr. Markham refused to accept service on behalf of the Roggios. (Digiulio Affidavit ¶¶ 7, 8; DE 14-1.) After the Court issued the Order to Show Cause, Plaintiffs' counsel sent Defendants the Verified Complaint and Order to Show Cause via Federal Express overnight mail to Defendants' Rumson, New Jersey home on October 28, 2011. (<u>Id.</u> ¶ 12, Ex. C.) Subsequently, Plaintiffs unsuccessfully attempted personal service on November 6, 2011, November 9, 2011, and November 22, 2011. (Decl. of Counsel in Opposition, Ex. C; DE 30-2.) Further, throughout the litigation, Plaintiffs mailed copies of various discovery requests and orders to Defendants at their home. (<u>Id.</u> at Ex. E-J; DE 30-2.) However, the Court's Order to Show Cause, erroneously did not call for issuance of a summons, and one was never issued.

Defendants did not file an answer within the seven days set forth in the Order to Show Cause or within the time set by the Federal Rules of Civil Procedure.[2] The Clerk of Court entered Default against them on January 26, 2012 pursuant to Fed. R. Civ. P. 55(a). (See DE 12.) Mr. David Messer, Esq. made a special appearance on behalf of Defendants by letter on January 26, 2012 contesting personal jurisdiction on the grounds that Defendants had not been properly served. (Decl. of Counsel in Opposition, Ex. K; DE 30-2.) In an e-mail to the parties, Magistrate Judge Tonianne J. Bongiovanni stated the following regarding service of process:

> With respect to Mr. Messer's letter indicating that Vincent Roggio and Callie Lasch Roggio may not have been properly served, the Court invites Mr. Messer and the Roggios to review the Docket in this matter. A full review of the docket appears to indicate that the Roggio's were properly served according to the terms of the District Court's Order to Show Cause.

(Id. at Ex. L; DE 30-2.) Defendants maintain they were not personally aware of any efforts on the part of Plaintiffs to effect service of process, including the Federal Express delivery of the Verified Complaint and Order to Show Cause. (Cert. of Vincent Roggio and Callie Lasch Roggio ¶¶ 2, 3; DE 19-2.)

Plaintiffs filed a Motion for Default Judgment on January 27, 2012. (DE 14.) On February 24, 2012, Defendants filed a Motion to Dismiss for lack of personal jurisdiction based upon insufficient service of process. (DE 19.) Plaintiffs oppose the Motion to Dismiss. (DE 30.) Defendants also filed a Cross Motion to Vacate Default pursuant to Fed. R. Civ. P. 55(c) on March 5, 2012. (DE 22.) Plaintiffs oppose the Cross Motion to Vacate Default. (DE 34.) Because the three Motions involve common facts and legal questions, the Court will decide the

---

[2] The Mita Defendants filed an answer and cross claims on November 22, 2011. (DE 6.) There is no record of an answer, appearance, or response by Defendant Kathleen Bradley, who is named as a "mutual business associate" of Mr. Avallone and Mr. Roggio. (Verified Compl. ¶ 121.) Plaintiffs claim, inter alia, that Ms. Bradley is in possession of property obtained by wrongful means and that the property must be turned over to Plaintiffs. (Id. ¶¶ 165, 168.)

4

Motions together. However, in order to decide whether default and default judgment are appropriate, the Court must first decide whether the Roggios were properly served and are thus subject to the jurisdiction of the Court.

## II.  DISCUSSION

### A.  Motion to Dismiss

Defendants seek dismissal of the Verified Complaint for lack of personal jurisdiction due to insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(2) and (5). Plaintiffs bear the burden of proving sufficient service of process. See Grand Entm't Grp. v. Star Media Sales, 988 F.2d 476, 488 (3d Cir. 1993).

Fed. R. Civ. P. 4 governs service of process, the purpose of which is to ensure that a party receives notice of a lawsuit. Unless otherwise required by federal law, an individual may be served in the United States by "following state law for serving a summons" in the state "where the district court is located or where service is made." Fed. R. Civ. P. 4(e). Under New Jersey law, a plaintiff may undertake substituted service by submitting an affidavit stating that "despite diligent effort and inquiry personal service cannot be made," and then by "mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail . . . addressed to the individual's dwelling house or usual place of abode." N.J. Ct. R. 4:4-4(b)(1)(C).

An individual may also be served by way of (1) personal service; (2) leaving the summons and the complaint at the individual's "dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (3) serving process upon an agent "authorized by appointment or by law" to receive service. Fed. R. Civ. P. 4(e).

Relevant to this case, this Court's Local Rules require that an application for emergency relief, such as an order to show cause, "shall provide for service upon the opposing party of the order with all supporting papers, as specified by the Court." D.N.J. Civ. R. 65.1(c). Importantly, "[a]n order to show cause which is issued at the beginning of the action may not, however, serve as substitute for a summons which shall issue in accordance with Fed. R. Civ. P. 4." Id. at 65.1(a).

The Rules provide a limited time in which to complete service. "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

Here, the Defendants were not properly served within the 120-day time limit in accordance with the technical requirements of Fed. R. Civ. P. 4. First, the Order to Show Cause provided the means for serving the Verified Complaint, but, inexplicably, did not call for the issuance of a summons. Pursuant to Local Rule 65.1(a), the method for service provided in the Order to Show Cause could not serve as a substitute for the summons required by Fed. R. Civ. P. 4. Thus, even though it is likely that Defendants received a copy of the Verified Complaint and Order to Show Cause via Federal Express overnight delivery, this method of service was insufficient to satisfy the technical requirements of Fed. R. Civ. P. 4(e).

Plaintiffs contend in the alternative that the Roggios were properly served pursuant to N.J. Ct. R. 4:4-4(a), which sets forth a method of substituted service. But Plaintiffs did not comply exactly with the requirements of substituted service. Specifically, Plaintiffs first mailed the Verified Complaint and Order to Show Cause, without a summons, via overnight mail rather than by "registered or certified mail, return receipt requested, and, simultaneously, by ordinary

mail." N.J. Ct. R. 4:4-4(b)(1)(C). Moreover, Plaintiffs mailed the Verified Complaint and Order to Show Cause on October 27, 2011 before attempting personal service in November 2011. However, N.J. Ct. R. 4:4-4(b) provides for substituted service only after a diligent effort to effect personal service upon a defendant. Therefore, even though the Plaintiffs' mistake appears to the Court to be inconsequential, Plaintiffs have not properly served the Roggios pursuant to N.J. Ct. R. 4-4(b)(1)(C) and Fed. R. Civ. P. 4(e)(1).

While the Court finds that Plaintiffs have not complied with the technical requirements of Fed. R. Civ. P. 4 within the 120-day limit, that does not end the analysis. See Braxton v. United States, 817 F.2d 238, 241 (3d Cir. 1987) ("The time limit is not absolutely inflexible."). If the plaintiff can demonstrate good cause in failing to serve a defendant, a district court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The rules do not define "good cause," but the Third Circuit equates "good cause" with the Fed. R. Civ. P. 6(b)(2) standard of "excusable neglect." See MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995). The "good cause" exception protects "diligent plaintiffs who, though making every effort to comply with the dictates of the rule, nonetheless exceed the 120-day limit for service." Green v. Humphrey Elevator and Truck Co., 816 F.2d 877, 880 (3d Cir. 1987).

There are three factors in determining whether to grant an extension for good cause. The first factor is whether the plaintiff undertook reasonable efforts in attempting service of process. See MCI Telecomms. Corp., 71 F.3d at 1097. Here, Plaintiffs were not only diligent but exhaustive in their attempts at service. Plaintiffs attempted service on five separate occasions. Moreover, Plaintiffs complied with the Order to Show Cause, which they in good faith and with agreement from Judge Bongiovanni believed to be the court-ordered method of service.

However, the Order to Show Cause service provision was itself deficient in failing to call for issuance of a summons, an error that the Court will not impute to Plaintiffs.

The second factor in the analysis of good cause is prejudice to Defendants due to lack of timely service. Id. Defendants are not prejudiced here because, from the outset, they had actual notice of the proceeding. Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988) (holding that a defendant with actual notice of the claims and underlying facts and legal theories "cannot complain of undue prejudice"). Defendants admit that they were made aware of the commencement of this case by their counsel in the Underlying Action. (Defs. Br. in Support of Cross Motion to Vacate Default at 3; DE 22-1.) Moreover, Plaintiffs mailed to Defendants copies of various litigation papers on at least six separate occasions, in addition to the overnight Federal Express delivery of the Verified Complaint and Order to Show Cause. It is simply implausible that Defendants had no knowledge of these papers or the proceedings before the Court. Indeed, this action did not arise out of thin air, but stems directly from post-judgment discovery granted in the Underlying Action.

The third factor in analyzing good cause is whether the plaintiff moved for an enlargement of time to serve. See MCI Telecomms. Corp., 71 F.3d at 1097. In this case, Plaintiffs have not moved for an extension, presumably because Plaintiffs did not believe one necessary since the Clerk of Court entered default on January 26, 2012. "An application for enlargement of time in which to serve might well reflect a plaintiff's diligence in trying to effect service. However, failure to make such a motion certainly is not by itself fatal to a plaintiff's efforts to establish good cause." United States v. Nuttall, 122 F.R.D. 163, 167 (D. Del. 1988) (quoting Gordon v. Hunt, 116 F.R.D. 313, 321 (S.D.N.Y. 1987)). As explained above, the Court cannot question Plaintiffs' diligence in attempting service upon Defendants.

Upon considering these three factors, the Court finds good cause. "[W]hile there must be substantial compliance with the rules of service, they are to be liberally construed where, as seems to be the case here, defendant has sufficient notice of the complaint." Concepcion v. VEB Backereimaschenbau Halle, 120 F.R.D. 482, 485 (D.N.J. 1988). This case is not one in which the plaintiff was derelict in attempting to serve the defendant. While not in literal compliance with the technical requirements of the rules, the Court finds Plaintiffs' attempts to serve the Roggios to be in good faith. Given the early stage of the proceedings, "there exists a reasonable prospect that service may yet be obtained" without prejudice inuring to Defendants. See Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992). Therefore, the Court must extend the time for service of process pursuant to Fed. R. Civ. P. 4.[3]

Even in the absence of good cause, a court still has broad discretion to extend the time for service. Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995.) There are a number of relevant factors to take into account: (1) actual notice of the legal action; (2) prejudice to the defendant; (3) the statute of limitations on the underlying causes of action; (4) the conduct of the defendant; (5) whether the plaintiff is represented by counsel; and (6) any other additional factors. See Chiang v. United States SBA, 331 Fed. Appx. 113, 116 (3d Cir. 2009) (citations omitted). A court considers these factors in light of the Third Circuit's "preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

Here, even if good cause was lacking, the Court would elect to grant a discretionary extension because the Court suspects that Defendants are attempting to avoid service in this case.

---

[3] In the interest of judicial economy and to expedite the resolution of this case, the Court suggests that Defendants authorize their counsel, Mr. David Messer, Esq., to accept service on their behalf. The Court further suggests that Plaintiffs request and Defendants waive service given that "[a]n individual . . . that is subject to service under Rule 4(e) . . . has a duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1)

See Fed. R. Civ. P. 4(m) advisory committee's note (1993) (stating that a discretionary extension may be appropriate where a defendant is evading service). Despite being aware of this case from the beginning, Defendants did not enter an appearance until after default was entered. Before that time, Plaintiffs attempted personal service three times at Defendants' home. But the process server stated in his affidavits that each time he attempted personal service, the Defendants' gate was closed and his calls through the intercom went unanswered. Moreover, given that Defendants are accused of transferring and hiding assets in order to evade payment of the Final Judgment, the Court is especially unwilling to dismiss the action due to a technical problem with the service of process.

Given these concerns, the Court will grant Plaintiffs leave to file a motion for alternative service if Plaintiffs are unable to serve Defendants despite a diligent effort to do so during the extension. See N.J. Ct. R. 4-4(b)(3) ("If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law.").

### B.     Default Judgment

A motion to set aside default and a motion for default judgment are addressed to the sound discretion of the court. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951). The Third Circuit "does not favor entry of defaults or default judgments." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984). Rather, it prefers adjudication on the merits. Hill v. Williamsport Police Dep't, 69 Fed. Appx. 49, 51 (3d Cir. 2003). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and

(3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

The Court has determined that Defendants have not been properly served. Therefore, entry of default judgment would be in error. United States v. One Toshiba Color TV, 213 F.3d 147, 156 (3d Cir. 2000) (holding that default judgment without proper service is void). For the same reason, entry of default was improper. Therefore, the Court will deny Plaintiffs' Motion for Default Judgment and grant Defendants' Cross Motion to Vacate Default.

### III. CONCLUSION

For the reasons above, the Court denies the Motion for Default Judgment and grants the Cross Motion to Vacate Default. Further, the Court denies the Motion to Dismiss but extends the time to complete service of process by thirty (30) days. If Plaintiffs are unable to effect service of process upon Defendants despite a diligent effort to do so during the 30 day extension, Plaintiffs are granted leave to file a motion for alternative service pursuant to Fed. R. Civ. P. 4(e)(1) and N.J. Ct. R. 4:4-4(b)(3). An appropriate order is filed herewith.

Dated: June 15, 2012

_____
United States District Judge