NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EUGENIA K. EMMANOUIL and ANTHONY Z. EMMANOUIL | : | |
| Plaintiffs, | : | Civil No. 11-5575 (JAP) |
| v. | : | **OPINION** |
| MITA MANAGEMENT, LLC, et al., | : | |
| Defendant. | : | |

PISANO, District Judge

Presently before the Court are two motions filed by Defendant Vincent Roggio ("Roggio"). The first is a motion to void the Court's April 4, 2011 judgment entered *Emmanouil, et al. v. Roggio, et al.*, Civ. Action No. 06-1068 (the "Underlying Action"), pursuant to Federal Rule of Civil Procedure 60(b)(4) [ECF No. 117].[1] The second is a motion to disqualify Plaintiffs' counsel, McElroy, Deutsch, Mulvaney and Carpenter ("MDMC"), in this case [ECF No. 112]. For the reasons set forth below, Defendant's motions are denied.

**I.      BACKGROUND**

The litigation of this matter, including the Underlying Action, has been ongoing for several years, and although styled this time as both a "Consolidated Pre-Trial Motions for Vacatur and Rendering the Judgment Void" and a "Motion to Disqualify Plaintiffs' Counsel McElroy, Deutsch, Mulvaney and Carpenter," the presents motions represent another exhaustive attempt by Roggio to litigate issues that have repeatedly been decided by this Court.

---

[1] All docket numbers, unless otherwise specified, refer to this initial action, 06-1068.

Anthony Z. Emmanouil, Eugenia K. Emmanouil, and West Belt Auto Supply, Inc. ("West Belt") (collectively, the "Underlying Action Plaintiffs") initiated the Underlying Action by filing the initial complaint on March 7, 2006 [No. 06-1068, ECF No. 1].  On December 23, 2008, Roggio filed a Motion to Disqualify McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC"), Anthony Z. and Eugenia K. Emmanouil's (collectively the "Emmanouils") counsel, because it allegedly violated Rule of Professional Conduct (RPC) 8.4 by receiving confidential information protected by the attorney-client privilege from Roggio's former counsel, the Emmanouil's son, and used this information to litigate the case against Roggio [No. 06-1068, ECF No. 115].  This motion was denied on May 5, 2009 [No. 06-1068, ECF Nos. 130, 131].  The Magistrate Judge temporarily sealed the exhibit containing the allegedly confidential information and gave Roggio until May 22, 2009 to move to permanently seal it [No. 06-1068, ECF No. 131].  On May 22, 2009, Roggio filed a motion to permanently seal the exhibit and appealed the decision denying the Motion to Disqualify MDMC [No. 06-1068, ECF Nos. 141, 144].  The Magistrate Judge granted the motion to seal on July 1, 2009 [No. 06-1068, ECF No. 157].  This Court affirmed the denial of the Motion to Disqualify MDMC on November 23, 2009 [No. 06-1068, ECF No. 193, 194].  Relevant here, this Court found that Roggio presented "little more to support his attempt to disqualify McElroy than conclusory allegations thinly buttressed with cherry-picked passages from prior decisions in this case.  That is not sufficient to support the 'drastic measure' of attorney disqualification." [No. 06-1068, ECF No. 193, at 8].

Subsequently, on January 20, 2010, Roggio filed a complaint in the Superior Court of New Jersey, alleging defamation and violation of his right to privacy due to the publication of the exhibit.  *See Roggio v. MDMC*, Civil Action No. 10-777.  Defendants MDMC and the Emmanouils removed the case to this Court.  [No. 10-777, ECF No. 1].  Roggio then filed a

Motion to Remand the case to the Superior Court of New Jersey, and Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) [No. 10-777, ECF Nos. 5, 6]. On April 14, 2010, this Court granted Defendants' Motion to Dismiss and denied Roggio's Motion to Remand [No. 10-777, ECF Nos. 26, 27]. Regarding whether MDMC should be disqualified, the Court determined that "the publication of Roggio's criminal history was clearly made in a judicial proceeding by litigants authorized to do so" because "the information was not subject to a sealing order at the time of its publication" [ECF No. 10-777, ECF No. 26, at 6–7]. Furthermore, MDMC submitted the exhibit to show that "it did not receive information from the Emmanouils' son that was protected by the attorney-client privilege" since "it had obtained the information from a filing made earlier in the District Court action by Roggio's counsel." *Id.* at 7. On February 28, 2011, the Third Circuit affirmed this Court's decision [No. 10-777, ECF No. 30].

The original dispute involving the parties resulted in a two week jury trial, which commenced on August 24, 2010, and ended on September 3, 2010 [*See* No. 06-1068, ECF No. 265–273]. The jury found that Roggio (1) breached a fiduciary duty owed to the Plaintiffs; (2) breached the contract for the sale of West Belt; (3) breached the mortgage contract under which he was required to repay $850,000 to Anthony Emmanouil; and (4) was unjustly enriched by retaining Plaintiffs' money without repayment. The jury awarded Plaintiffs damages in the amount of $1,222,311 [*See* No. 06-1068, ECF No. 274]. On September 10, 2010, Plaintiffs filed a Motion for Attorney's Fees and Pre-Judgment Interest [No. 06-1068, ECF No. 278]. On October 1, 2010, this Court entered judgment in favor of Plaintiffs in the amount of $1,222,311 [No. 06-1068, ECF No. 293].

On April 4, 2011, the Court denied Roggio's post-trial motions, which included a Motion for Judgment NOV, a Motion for New Trial, and a Motion to Stay execution of the judgment,

and granted Plaintiffs' Motion for Attorneys Fees [No. 06-1068, ECF No. 323]. Roggio argued, *inter alia*, that there should be a new trial because West Belt was misaligned as a party because he owned a 90% interest in it. The Court denied the motion because, *inter alia*, West Belt was a properly aligned party since Roggio pursued several causes of action against it. In addition, the Court dismissed a new complaint, which was originally filed on October 13, 2010 in the Southern District of Texas and was transferred to the District of New Jersey [*see Roggio v. Emmanouil et al.*, Civ. Action No. 11-1171, ECF No. 1]. In that Complaint, Roggio sought a declaratory judgment that he owned 90% of West Belt and a preliminary injunction, enjoining the Emmanouils from transferring any of West Belt's assets. However, the Court held that the Complaint was barred by res judicata because "the jury squarely addressed the contract between Anthony Emmanouil and Roggio for the sale of West Belt, and decided that Roggio breached the contract"; therefore, "any additional litigation on this point is unnecessary and must be disallowed" [No. 06-1068, ECF No. 322 at 11–12]. Moreover, the Court granted Plaintiffs' Motion for Attorney's Fees and Costs and directed Plaintiffs to submit an amended form of judgment. *Id.* On April 8, 2011, the Court entered an amended judgment in the amount of $1,945,119 [No. 06-1068, ECF No. 324].

On April 27, 2011, Roggio filed an appeal from this Court's judgment entered on October 1, 2010, the amended judgment entered on April 8, 2011, the November 23, 2009 order denying the Motion to Disqualify MDMC, and the April 4, 2011 judgment denying his Motion for Judgment NOV and for a New Trial [No. 06-1068, ECF No. 329]. On September 24, 2012, the Third Circuit affirmed this Court's decisions but modified the award of attorney's fees [No. 06-1068, at ECF No. 380].

As part of the Underlying Action, Chief Judge Brown granted additional discovery to locate the assets of Roggio pursuant to Federal Rule of Civil Procedure 69(a)(2).  In the order granting post-judgment discovery, Judge Brown stated that "it appears . . . Roggio has, for years, been funding most aspects of his life with approximately $2 million in total funds periodically transferred from [Michael] Avallone and Mita Management, LLC" [No. 06-1068, ECF No. 336, at 1–2].  Mita Management, LLC, which Mr. Avallone owns, is a company that manages several check cashing stores.  The Court granted discovery into "the apparently unusual relationship between Roggio, Avallone, and [Mita Management]."  *Id.*  Based upon post-judgment discovery and the inability to secure payment of the Final Judgment, the Emmanouils filed this current action on September 26, 2011 [ECF No. 1].

While this appeal was pending, on June 14, 2012, Roggio's then-counsel this action entered an appearance on behalf of West Belt[2] and filed a Motion for Preliminary Injunction in the Underlying Action, seeking: (1) to restrain and stop all collection efforts by any plaintiff on account of any judgment; (2) restrain the Emmanouils from selling or transferring their ownership interest in West Belt; (3) disqualifying MDMC from representing any party in this action; and (4) restrain the Emmanouils "from exercising or attempting to exercise any authority or control of and over the affairs and management of West Belt . . . ." [No. 06-1068, ECF No. 355-2].  On June 21, 2012, the Court denied the Motion for Preliminary Injunction, determining that Roggio was estopped from raising the issue of the ownership of West Belt because "a jury . . . already determined that Roggio does not own" it [No. 06-1068, ECF No. 360, at 5].  The Court found that Roggio

> purportedly on behalf of West Belt, has requested a trial court to undertake appellate review of matters decided by it and the jury.  However, jurisdiction to

---

[2] Roggio's counsel entered an appearance on behalf of West Belt because Roggio claimed he owned 90% of it and therefore, could authorize West Belt to retain counsel.  MDMC also entered an appearance on behalf of West Belt.

5

> conduct appellate review of the matters decided in this case lies with the Third Circuit. Further, unless and until a court decides that Roggio is a 90% owner of West Belt, McElroy is not in violation of the RPCs, and consequently, there is no basis to disqualify the firm.[3]

*Id.* at 5–6.

Roggio moved for another Preliminary Injunction and Order to Show Cause on August 1, 2012 [No. 06-1068, ECF No. 369]. That same day, the Court denied the motion because it requested relief identical to the relief requested in the June 14, 2012 motion [No. 06-1068, ECF No. 371]. Roggio moved for reconsideration on August 15, 2012 [No. 06-1068, ECF No. 373].

On August 23, 2012, the Court denied the Motion for Reconsideration [No. 06-1068, ECF Nos. 376, 377]. The Court outlined the Roggio's arguments: (1) the Court has not addressed his argument that the Emmanouils and McElroy "admitted before and during trial that [he] was a 90% owner of West Belt"; (2) the Court has not addressed "an alleged conflict of interest held by" MDMC because the alleged violations of RPC 1.7 are not barred by res judicata; (3) the Court has not addressed the publication of Roggio's criminal history by the Emmanouils and MDMC, which is a violation of privacy and the attorney-client privilege; and (4) the Court has not considered that the "Emmanouils and McElroy seek to be awarded despite an irrefutable record of repeated lawlessness to taint and prejudice these proceedings and deflect from the paucity of their case" [No. 06-1068, ECF No. 376, at 7–8].

The Court then determined that "each of these grounds has been raised and considered by this Court either in this case, in related civil actions, or on appeal . . . , and Roggio does no more than restate his disagreement with various decisions by the jury and by the Court." *Id.* at 8. The Court explained that "the contract for the sale of West Belt and the claims related to" it "were considered and decided by the jury and again addressed by this Court through post-trial motion

---

[3] Roggio appealed this decision, but the Third Circuit dismissed the appeal for failure to pay the filing fee [No. 06-1068, ECF Nos. 363, 368].

practice . . . ." *Id.* at 8–9.  The Court also found that it addressed the disqualification of MDMC in its June 21, 2012 Opinion and had held that MDMC did not violate Roggio's privacy regarding the publishing of his criminal record in its April 14, 2010 Opinion.  *Id.* at 9.  The Court explained that it had denied the Motion for Preliminary Injunction and Order to Show Cause on August 1, 2012, because of res judicata as the motion "was identical to relief requested and denied in the June 21, 2012 order."  *Id.* at 10.  Furthermore, the Court decided that reconsideration was improper because Roggio sought "only to reargue findings of fact and conclusions of law that were made either in this case or in his case against McElroy for violations of privacy and defamation."  *Id.*  Lastly, the Court warned that it could not and would not "continue to entertain Roggio's unrelenting disagreement . . . with the decisions made by the jury, by the Court, and by the Third Circuit" and submitting "duplicative and/or frivolous motions, applications, or other requests . . . may result in the imposition of sanctions, which could include restrictions on future filing without the prior, written approval of the Court."  *Id.* at 11.

Then, in this action, the Roggios moved for the recusal of the Magistrate Judge on April 20, 2012 [ECF No. 38].  While the Roggios alleged numerous reasons for the recusal for the Magistrate Judge, the basis for all these arguments was the Magistrate Judge's decision denying the motion to disqualify MDMC.  The Roggios claimed that the Magistrate Judge, in deciding the motion to disqualify, reviewed *de novo* this Court's legal and factual conclusions, thereby exceeding her jurisdiction under 28 U.S.C. § 636.  On June 19, 2012, the Court denied the recusal motion, commenting that "[i]t is apparent that the Roggios simply disagree with the ultimate disposition of their motion to disqualify [MDMC] in the [Underlying Action]" [ECF No. 43, at 10].  The Court expressly noted that it did not appear that the Magistrate Judge

7

"overturned or in any way was inconsistent with [this Court's] decision," *id.* at 9 n.3, and held that any argument concerning a potential lack of jurisdiction on the part of the Magistrate Judge or overall disagreement with the Magistrate Judge's decision must be presented in an appeal, not as a motion to disqualify MDMC. *Id.* at 10.

Subsequently, Roggio moved for the recusal of Judge Pisano in the Underlying Action, arguing that the Judge should be recused because of his "willingness to ignore the Truth, Sealing Orders, Judicial Admissions, Judicial Estoppel, Felonious Agreements, False Statements to the FBI, Unwarranted Violations of Privacy and the Clear Binding Precedents of both the Supreme Court of the United States and the New Jersey Supreme Court . . . ." [No. 06-1068, ECF No. 378-1, at 3]. The Court denied Roggio's motion for recusal on January 29, 2013, noting that the motion was "an obvious attempt by Roggio to re-hash the same arguments until he finds a ruling in his favor or evades satisfaction of the judgment against him." [No. 06-1068, ECF Nos. 390, 391].

Most recently, Roggio argued in the Underlying Action that the judgment of the Court entered on April 4, 2011 is void because the Court lacked subject matter jurisdiction over the case [No. 06-1068, ECF No. 394]. Roggio alleged that Plaintiffs and their counsel, over the course of four and a half years, "perpetrated a knowing fraud on the Court and subverted due process" by submitting to the Court a "judicially-admitted false Agreement" regarding the sale and ownership of West Belt. *Id.* at 1. Roggio argued Plaintiffs and their counsel alleged that Mr. Emmanouil was the 100% owner of West Belt, despite knowing that Roggio was actually the 90% owner of West Belt. *Id.* at 2. Finally, Roggio contended that Plaintiffs' counsel improperly acted as West Belt's counsel without Roggio's permission and that he was deprived of due process because MDMC was not disqualified as counsel for Plaintiff. *Id.* at 16. This Court

denied the motion, holding that Roggio "failed to demonstrate that the Court lacked subject matter jurisdiction at any time during the pendency of this matter." [No. 06-1068, ECF No. 400, at 9]. As the Court noted then, "Each of the issues raised by Roggio, including the ownership of West Belt, has been repeatedly raised and considered by this Court either in this case, in related civil actions, or on appeal to the Third Circuit, and Roggio does no more than restate his disagreement with various decisions by the jury and by the Court." *Id.* at 8.

## II.     LEGAL STANDARD

### A.     Standard under Rule 60

Federal Rule of Civil Procedure Rule 60(b)(4) provides, "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceedings [if] . . . the judgment is void." Fed. R. Civ. P 60(b)(4). "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270 (2010). "The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *Id.* The Third Circuit has held that "[a] judgment may indeed be void, and therefore subject to relief under 60(b)(4), if the court that rendered it lacked jurisdiction over the subject matter or the parties or entered 'a decree which is not within the powers granted to it by law.'" *Marshall v. Bd. of Ed., Bergenfield, N.J.,* 575 F.2d 417, 422 (3d Cir. 1978) (citation omitted). However, not any alleged jurisdictional error renders a judgment void, and finality requires that courts construe the concept of void judgment narrowly. *Id.* at 422, n. 19. Accordingly, "[w]hile absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction." *Id.* (citation omitted). A judgment is not void under Rule 60(b)(4) "simply because it is erroneous,

or is based upon precedent which is later deemed incorrect or unconstitutional." *Id.* "Thus . . . a judgment will be rendered void for lack of subject matter jurisdiction only where there is a 'total want of jurisdiction' or 'in the rare instance of a clear usurpation of power." *U.S. v. Zimmerman*, 491 F. App'x 341, 344 (3d Cir. 2012) (citation omitted).

### B. Standard for Disqualification of Counsel

Local Civil Rule 103.1(a) governs questions of professional ethics in this District, and provides that the RPCs are to be used to resolve same. *See Carlyle Towers Condo. Ass'n v. Crossland Sav.*, 944 F. Supp. 341, 345 (D.N.J. 1996). In interpreting the RPCs, the Court looks to New Jersey's state courts' interpretations of them as primary authority and modifies that interpretation when required or permitted by federal law. *See* L. Civ. R. 103.1(a); *see also Steel v. General Motors*, 912 F.Supp. 724 (D.N.J. 1995).

When considering a motion to disqualify counsel, the movant bears the burden of proving that disqualification is appropriate because the RPCs were violated. *See Maldonado v. New Jersey*, 225 F.R.D. 120, 136-37 (D.N.J. 2004). Because "[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary,'" the movant's burden is a heavy one. *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) (internal quotation marks and citation omitted)). Consequently, in determining whether to disqualify counsel, courts must closely and carefully scrutinize the facts of each case to prevent unjust results. *See Montgomery Acad. v. Kohn*, 50 F. Supp. 2d 344, 349 (D.N.J. 1999). Courts must consider the relative hardships of each party, *see id.*, and "balance the need to maintain the highest standards of the [legal] profession against a client's right to freely choose his counsel." *Steel*, 912 F. Supp. at 733 (internal quotation marks

and citations omitted).  If, however, there is any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification.  *See Maldonado*, 225 F.R.D. at 137.

## III. DISCUSSION

### A. Motion Under Federal Rule of Civil Procedure 60(b)(4)

First, Roggio once again argues that the judgment of the Court entered in the Underlying Action on April 4, 2011 is void because the Court lacked subject matter over the case.  The motion is nearly identical to the motion to vacate the Court's judgment that Roggio filed in the underlying action in which he asserted that the Court lacked subject matter over the case.  *See* ECF No. 117.  Roggio asserts that Plaintiffs and MDMC "purposefully and strategically" presented a false agreement regarding the sale and ownership of West Belt to this Court over the court of the litigation, thereby depriving the Court of subject matter jurisdiction.  *Id.* at 1–2. According to Roggio, the Emmanouils and MDMC used the false agreement to prove that the Emmanouils owned 100% of West Belt, despite knowing that Roggio actually owned 90% of West Belt.  Further, Roggio contends that MDMC improperly acted as West Belt's counsel without Roggio's permission and that MDMC should have been disqualified as counsel for violating the attorney-client privilege.  *Id.* at 6–16.

As even the briefest review of this litigation reveals, Roggio is simply re-arguing issues that have been repeatedly considered by this Court in either this case, in related civil actions, or on appeal to the Third Circuit.  The contract for the sale of West Belt and the claims related to that contract, including the ownership of West Belt, were considered and decided by the jury and again addressed by this Court through post-trial motion practice over a year ago.  Roggio's allegations that this Court and the Third Circuit lacked jurisdiction to enter a judgment against

11

him because of alleged factual disputes and purported actions by MDMC have been rejected and disposed of by this Court and affirmed by the Third Circuit. This Court has already ruled that Roggio is estopped from raising the issue of the ownership of West Belt, and has held numerous times that related issues were barred by res judicata more generally. (*See* No. 06-1068, ECF No. 360, at 5–6 (finding that collateral estoppel barred Roggio from raising the issue of West Belt's ownership); No. 376, at 5–6 n.5 (stating that Roggio "has requested the same relief against the same parties on four occasions, and as a result, the last three results were all denied under the doctrine of res judicata")). Accordingly, this issue is not subject to attack unless Roggio "can point to the type of jurisdictional error that would render the judgment void from its inception." *Zimmerman*, 491 F. App'x at 345.

As with Roggio's motions filed in the related actions, the Court finds that Roggio has failed to demonstrate that the Court lacked subject matter jurisdiction at any time during the pendency of this matter. Voiding a judgment is an extraordinary remedy, which is used only in the most extreme and exceptional cases. *See United Student Aid Funds*, 559 U.S. at 271 (explaining that federal courts considering a Rule 60(b)(4) motion "have reserved relief only for the exceptional case"). This is, quite simply, not such a case. There is no arguable basis to overturn a judgment that is now several years old, particularly based upon factual and legal assertions that have been consistently rejected by this Court. Roggio has pointed to no other jurisdictional error that would render jurisdiction void from its inception; therefore no "total want of jurisdiction" or "clear usurpation of power" by the Court exists as required to void a judgment under Rule 60(b)(4). *Zimmerman*, 491 F. App'x at 344, 345. Accordingly, Roggio's motion to vacate the judgment pursuant to Rule 60(b)(4) must be denied.

### B. Motion for Disqualification of Counsel

Likewise, Roggio's motion to disqualify MDMC is also premised on two arguments that are well-known to this Court. The first is that MDMC violated RPCs 8.4 and 1.6 by receiving confidential information protected by the attorney-client privilege from Roggio's former counsel, the Emmanouil's son, and by using this information to litigate the case against Roggio. Roggio argues that the Magistrate Judge's denial of their motion to disqualify MDMC back in 2008 was both incorrect and inappropriate under the law, and each court—from the District Court to the Third Circuit—that thereafter affirmed this finding lacked jurisdiction to do so. Roggio's second argument is that MDMC violated RPC 1.7(a) by representing West Belt without the written consent of Roggio, because he argues that he is the 90% owner of West Belt.

This Court once again finds that Roggio has failed to carry the heavy burden of disqualifying counsel. Like the arguments presented in his motion to vacate judgment, Roggio has repeated the same arguments that have been raised and rejected by this Court and several other Courts. In the Underlying Action, certain related actions, and in this action, Roggio has raised the same allegations against MDMC, as well as its clients, seeking disqualification of MDMC. In doing so, Roggio essentially seeks the over-turning of a judgment entered against Roggio by a jury several years ago. Each of these attempts has been addressed, denied, and dismissed. As such, collateral estoppel precludes the parties in this case from addressing these issues again. *See Sacharow v. Sacharow*, 177 N.J. 62, 76 (2003). Accordingly, Roggio is barred from raising these same arguments for the disqualification of MDMC here. Therefore, Roggio's motion to disqualify MDMC must be denied.

As a final note, the Court reiterates its warning made in an earlier Opinion, filed by this Court after Roggio filed these pending motions [*See* No. 06-1068, ECF No. 400]. Throughout

the course of this litigation, in both this case and the related actions, Roggio has filed papers in an attempt to relitigate matters already adjudicated. While Roggio may be sincere in his unrelenting disagreement with the decisions made by the jury, this Court, and the Third Circuit, the Court cannot and will not entertain any further duplicative motion. The Court has made clear that these arguments, based on the same claims or issues that have already been adjudicated, are barred by res judicata. *See Velasquez v. Franz*, 123 N.J. 498, 505 (N.J. 1991) ("The term 'res judicata' refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated."). Once again, the Court warns Roggio that any further submission of duplicative and/or frivolous motions, applications, or other requests by Roggio or anyone on behalf of Roggio in this action or in any of the related actions before this Court, may result in the imposition of a sanction, which could include restrictions on future filings without the prior, written approval of the Court.

## IV.   CONCLUSION

For the reasons stated above, Defendant Roggio's motion to void the Court's judgment pursuant to Federal Rule of Civil Procedure 60(b)(4) is denied and Roggio's motion to disqualify MDMC is denied. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano  
JOEL A. PISANO  
United States District Judge

Dated: September 23, 2014