**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENIA K. EMMANOUIL, et al., | : |
| Plaintiffs, | : Civil No. 11-5575 (MAS) (TJB) |
| v. | : **MEMORANDUM OPINION** |
| MITA MANAGEMENT, LLC, et al., | : |
| Defendants. | : |

**SHIPP, District Judge**

This matter comes before the Court by way of a motion to voluntarily dismiss the Complaint brought by Plaintiffs Mita Management, LLC, Michael Avallone, Community Check Cashing II, LLC, AAA Community Check Cashing II, LLC, AAA Affordable Check Cashing, LLC, Check Cashing Station, LLC, AG Bailey Check Cash, LLC, and Deerfield Funding, LLC (collectively, the "Mita Parties") pursuant to Federal Rule of Civil Procedure 41(a)(2). The subject of this action is a judgment received against Defendant Vincent Roggio ("Roggio") in *Emmanouil v. Roggio*, No. 06-1068 (D.N.J. *filed* March 7, 2006) (the "Underlying Action").[1] For the reasons expressed below, the Mita Parties's motion is granted.

---

[1] This action was originally brought by Anthony and Eugenia Emmanouil (the "Emmanouils") against the Mita Parties, Roggio, and others. After the Emmanouils assigned the subject judgment, which forms the basis of this action, to the Mita Parties, the parties stipulated to the dismissal of all claims against the Mita Parties, and the Court properly substituted the Mita Parties as Plaintiffs. (ECF Nos. 150, 152.)

I.  **Background**

This case, or some version of it, has existed in this Court since the filing of the Underlying Action in 2006. Accordingly, the facts relative to this case are well known to the parties and can be found in the Court's September 23, 2014 Opinion. (*See* Sept. 23, 2014 Op. 1-7, ECF No. 137.) The Court, therefore, will recite only those facts pertinent to the pending motion.

This lawsuit directly stems from the Underlying Action. After a jury trial in the Underlying Action, the Honorable Garrett E. Brown, Jr., U.S.D.J., entered a judgment on October 1, 2010, in the amount of $1,222,311 in favor of the Emmanouils and West Belt Auto Supply, Inc. (the "Underlying Plaintiffs") and against Roggio. On April 6, 2011, Chief Judge Brown amended the judgment to include pre-judgment interest and legal fees, bringing the total amount to $1,945,119. On January 30, 2013, the original judgment was amended again, bringing the total amount to $2,095,422.39 (the "Final Judgment"). The Underlying Plaintiffs were granted additional discovery to locate the assets of Roggio after he represented to the Court that he had no substantive assets or real property. Specifically, the Underlying Plaintiffs were granted leave to investigate the relationship between the Mita Parties and Roggio.

After being unable to secure payment of the Final Judgment and based on information learned through post-judgment discovery, the Emmanouils filed this action against Roggio and Callie Lasch Roggio ("Lasch Roggio"), Roggio's wife (collectively, the "Roggios"), and the Mita Parties. The Final Judgment forms the basis for this action, which asserts claims related to creditor fraud, conspiracy, and unjust enrichment. The essential theory of the Emmanouils' case is that Roggio and the Mita Parties conspired to prevent the Emmanouils from collecting the Final Judgment through a scheme in which Roggio hid his assets to appear judgment proof.

The Roggios were represented by counsel in this action until September 27, 2012, at which point they began representing themselves pro se. (*See* ECF No. 61.) Since that time, Roggio has largely filed motions that the Court has defined as attempts "to waste the time and resources of this Court and the other parties" (Jan. 6, 2015 Order 2, ECF No. 154), to wit, motions to disqualify the Honorable Tonianne J. Bongiovanni, U.S.M.J., to disqualify the Emmanouils' counsel, and to vacate the Final Judgment.

On September 23, 2014, the Honorable Joel A. Pisano, U.S.D.J,[2] entered an Opinion and Order denying motions for summary judgment filed by the Mita Parties and by Callie Lasch Roggio ("Lasch Roggio"), Roggio's wife. (ECF Nos. 137, 138.) Judge Bongiovanni held a pretrial conference on November 13, 2014, and subsequently, counsel for the Emmanouils and the Mita Parties reached a settlement agreement. As part of the settlement agreement, the Emmanouils assigned their rights in the Final Judgment to Michael Avallone or his designee. On or about December 5, 2014, counsel for the Mita Parties requested that the Roggios sign stipulations of dismissal with prejudice in order to conclude this litigation. In his correspondence, counsel explained that he could not disclose the terms of the settlement to the Roggios, but that the settlement disposed of the case in a way in which the Roggios would have no further liability to the Emmanouils or their assignees. (*See* Certification of Henry F. Wolff, III ("Wolff Cert."), Ex. B, ECF No. 153-5.)

The Roggios did not sign the stipulations of dismissal, and subsequently, the Mita Parties filed the pending motion to voluntarily dismiss the Complaint without prejudice. On January 12, 2015, Lasch Roggio filed an executed Stipulation of Dismissal with prejudice (ECF No. 157),

---

[2] This case was originally reassigned to Judge Pisano upon the retirement of Chief Judge Brown. This matter was then reassigned to the undersigned upon the retirement of Judge Pisano. In other words, this case has outlasted the tenure of not one, but two, district court judges.

3

leaving Roggio as the only remaining defendant in this matter. Roggio filed opposition to the pending motion, and this motion is the sole remaining issue in this case.

## II. Standard of Review

Under Federal Rule of Civil Procedure 41(a), a plaintiff may voluntarily dismiss a matter without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment," or filing "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper . . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2).

It is within the sound discretion of the court to grant a Rule 41(a)(2) dismissal. *See Quality Improvement Consultants, Inc. v. Williams*, 129 F. App'x 719, 722 (3d Cir. 2005). Without substantial prejudice to the defendant, a motion for voluntary dismissal under Rule 41 generally should not be denied. *See Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 255 (D.N.J. 2001). In determining whether a voluntary dismissal is likely to result in prejudice to the defendant, courts in this district have considered a variety of factors, including: "(1) the expense of a potential second litigation; (2) the effort and expense incurred by defendant in preparation for trial in the present case; (3) the extent to which the case has progressed; and (4) plaintiff's diligence in bringing the motion to voluntarily dismiss." *Shamrock Creek, LLC v. Borough of Paramus*, No. 12-2716, 2015 WL 3902307, at *2 (D.N.J. June 23, 2015) (citing *Sporn*, 173 F. Supp. 2d at 255). Generally, however, "Rule 41 motions should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990) (internal quotation marks omitted). "When a plaintiff moves for a

dismissal without prejudice under Rule 41(a)(2), the decision to dismiss with prejudice or without is left to the discretion of the court." *Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.*, 203 F.R.D. 156, 157 (D. Del. 2001) (citing *Buse v. Vanguard Grp. of Inv. Co.*, No. 91-3560, 1994 WL 111359, at *2 (E.D. Pa Apr. 1, 1994)).

### III. Discussion

Roggio opposes the Mita Parties's motion on three grounds. (Roggio Opp'n Br., ECF No. 160.) First, he asserts that the Court lacks subject matter jurisdiction to enforce the settlement agreement as between the Mita Parties and Roggio. This argument has no relevance to the motion because the Court is not enforcing the settlement agreement. Rather, it is addressing a motion to voluntarily dismiss the Complaint filed by the Mita Parties.

Next, Roggio argues that the Court lacks subject matter jurisdiction "to simply convert the Roggio co-defendants to plaintiffs against Roggio in this case." (*Id.* at 2.) The Court, however, did not simply convert the Mita Parties to plaintiffs; rather, the Emmanouils assigned the Mita Parties their right to the Final Judgment.[3] *See Mars, Inc. v. JCM Am. Corp.*, No. 05-3165, 2007 WL 776786, at *2 (D.N.J. Mar. 9, 2007) (the district court has discretion to substitute a party as plaintiff where the original plaintiff assigned its rights to the substituting party). This lawsuit is premised on the Final Judgment; accordingly, whoever has the right to the Final Judgment also has the right to pursue the claims that make up this lawsuit. Because the right to the Final Judgment was assigned from the Emmanouils to the Mita Parties as part of their settlement, and the Court, in its discretion, substituted the Mita Parties as Plaintiffs, the Mita Parties are the proper plaintiffs in this suit.

---

[3] The Mita Parties have provided an executed copy of the assignment to the Court. (*See* Wolff Cert., Ex. A.)

Finally, Roggio once again asserts that this Court lacks subject matter jurisdiction over this suit because of the alleged ownership issues of West Belt Supply Auto, Inc. ("West Belt"), a plaintiff in the Underlying Action. This argument, however, is nothing more than another attempt by Roggio to re-litigate issues concerning the contract for the sale of West Belt and the ownership of West Belt—issues that were raised by Roggio and ruled upon by the Court several times since the conclusion of the jury trial in the Underlying Action. Furthermore, the Court has warned Roggio numerous times that it would not continue to entertain this argument, which represents nothing more than Roggio's disagreement with the decisions made by the jury in the Underlying Action, this Court, and the Third Circuit.[4] To the extent that this argument operates as an opposition to the current motion, it lacks merit and is, accordingly, frivolous.

Here, under the requisite factors, there is no substantial prejudice to Roggio in granting the Mita Parties's motion. The lynchpin of a voluntary dismissal motion is whether the defendant will be prejudiced. First, there is no obvious prejudice that would result to Roggio if the Court were to voluntarily dismiss this action because the Mita Parties have represented that the settlement agreement between the Emmanouils and the Mita Parties completely resolves the controversy in question here, leaving little possibility of a second case. Logic dictates a similar finding; the premise of this case is that the Mita Parties conspired with Roggio to prevent the Emmanouils from collecting the Final Judgment. Thus, it was essentially through the Mita Parties that the

---

[4] (See, e.g., Jan. 6, 2015 Order, ECF No. 154 (denying Roggio's most recent motion to vacate because the Court had warned Roggio numerous times that it would not entertain such motion); Sept. 23, 2014 Op. 14, ECF No. 139 ("While Roggio may be sincere in his unrelenting disagreement with the decisions made by the jury, this Court, and the Third Circuit, the Court cannot and will not entertain any further duplicative motion."); Apr. 30, 2014 Op. 10, Underlying Action ECF No. 400 (citing Aug. 23, 2012 Op. 10-11, Underlying Action ECF No. 376) (explaining that the Court "cannot and will not continue to entertain Roggio's unrelenting disagreement, however sincere, with the decisions made by the jury, by the Court, and by the Third Circuit" relating to these issues).)

Emmanouils wished to secure payment of the Final Judgment, with Roggio as a nominal defendant. As the Mita Parties have already resolved this lawsuit with the Emmanouils and the Emmanouils have assigned their rights, it is highly unlikely Roggio could be prejudiced by the subsequent filing of a second matter by the Emmanouils. Additionally, dismissal of this lawsuit with prejudice would protect Roggio from the subsequent filing of a new action to collect on the Final Judgment by the Mita Parties. Finally, as Roggio has not asserted a counterclaim or cross-claim here, Roggio has no remaining stake in the outcome of this case that could be prejudiced by the dismissal of this matter.

Second, Roggio will not be prejudiced by the effort or expense incurred in his preparation of this matter because he is representing himself pro se and therefore has not incurred attorneys' fees. In addition, the time and effort Roggio has put into this case has largely involved the filing of the aforementioned repetitive and frivolous motions. Finally, while this case has progressed to pretrial stages, the Mita Parties brought this motion almost immediately after they were substituted as plaintiffs in this matter.

In sum, Rule 41 motions should be granted absent extreme prejudice to the defendants. Here, Roggio is the sole remaining defendant, and he has failed to indicate any prejudice that would befall him if this case was dismissed. Considering the risk, although low, of a second suit and the stage of this litigation, the Court will grant the Mita Parties's motion. The Court, however, will dismiss the Complaint with prejudice.

## IV. Conclusion

For the aforementioned reasons, the Mita Parties's Motion to Voluntarily Dismiss the Complaint is granted. The case is dismissed with prejudice. An appropriate order accompanies this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: August 24, 2015